# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-30353

United States Court of Appeals
Fifth Circuit

**FILED**

March 28, 2017

Lyle W. Cayce
Clerk

In Re: LOUISIANA CRAWFISH PRODUCERS

consolidated with: 16-30355, 16-30357, 16-30358, 16-30359, 16-30360, 16-30361, 16-30362, 16-30363, 16-30364, 16-30365, 16-30366, 16-30367, 16-30368, 16-30369, 16-30370, 16-30371, 16-30372, 16-30373, 16-30374, 16-30375, 16-30376, 16-30377, 16-30379, 16-30380, 16-30381, 16-30382, 16-30383, 16-30384, 16-30385, 16-30386, 16-30387, 16-30388, 16-30389, 16-30390, 16-30391, 16-30392, 16-30393, 16-30394, 16-30395, 16-30396, 16-30397, 16-30398, 16-30399, 16-30400, 16-30401, 16-30402, 16-30403, 16-30405, 16-30406, 16-30407, 16-30408, 16-30409, 16-30410, 16-30411, 16-30413, 16-30414, 16-30415, 16-30416, 16-30417, 16-30418, 16-30419, 16-30420, 16-30421, 16-30422, 16-30423, 16-30424, 16-30425, 16-30426, 16-30427, 16-30428, 16-30429, 16-30430, 16-30431, 16-30432, 16-30433, 16-30434, 16-30435, 16-30436, 16-30437, 16-30738, 16-30439, 16-30440, 16-30441, 16-30442, 16-30443, 16-30444, 16-30445, 16-30446, 16-30447, 16-30448, 16-30449

Appeals from the United States District Court
for the Western District of Louisiana

Before REAVLEY, ELROD, and GRAVES, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

The Louisiana Crawfish Producers Association-West and some of its commercial crawfishermen members sued a number of oil and gas companies and their insurers, claiming the companies' dredging activities caused damage to the fisheries the fishermen used. The district court granted summary judgment in favor of two of the companies, Florida Gas Transmission Co. and Southern Natural Gas Co., finding that Plaintiffs did not create a genuine issue

No. 16-30353

of material fact as to whether the two companies' activities constituted "dredging" so as to support maritime tort claims. Plaintiffs moved the district court to reconsider its grant of summary judgment and submitted new evidence for its review. The district court denied Plaintiffs' motion for reconsideration as to both companies. Plaintiffs appeal both the district court's order granting summary judgment as well as the denial of their motion for reconsideration. We AFFIRM the district court's grant of summary judgment and denial of the motion for reconsideration with respect to Florida Gas Transmission Co. With respect to Southern Natural Gas Co., we REVERSE the district court's denial of Plaintiffs' Rule 59(e) motion and VACATE its grant of summary judgment.

## I.

Plaintiffs-Appellants are the Louisiana Crawfish Producers Association-West and over eighty individual crawfishermen who operate in the Atchafalaya Basin in Louisiana (collectively, Plaintiffs).[1] They sued several companies, two of which are relevant to this appeal—Florida Gas Transmission Co. (Florida Gas) and Southern Natural Gas Co. (Southern Natural). Plaintiffs alleged that the companies' past canal dredging activities created spoil banks that damaged the Atchafalaya Basin fisheries Plaintiffs utilized.

After this case was removed from state court to the United States District Court for the Western District of Louisiana, various defendant companies filed a motion to dismiss, arguing that Plaintiffs failed to state a cause of action for maritime tort. The district court held that Plaintiffs had

---

[1] Crawfish, also known as crayfish, crawdads, freshwater lobsters, mountain lobsters, mudbugs, or yabbies, are freshwater crustaceans resembling small lobsters. While there are over 500 species of crawfish in the world, the Southeastern United States is home to around 330 of them. Wikipedia, *Crayfish*, https://en.wikipedia.org/wiki/Crayfish (last visited March 21, 2017). In 1983, the state of Louisiana designated the Louisiana crawfish, *Procambarus clarkii*, as its Official Crustacean, becoming the first state to bestow such an honor on a species of crustaceans. Wikipedia, List of U.S. State Crustaceans, https://en.wikipedia.org/wiki/List_of_U.S._state_crustaceans (last visited March 21, 2017).

## No. 16-30353

stated a maritime tort claim against Florida Gas, Southern Natural, and Dow Chemical Co. (Dow)[2] by alleging that these defendants engaged in dredging activities.[3] The district court dismissed Plaintiffs' claims against all other defendant companies because Plaintiffs failed to allege these companies had engaged in dredging activities. Plaintiffs appealed the dismissal of these defendants, but we affirmed. *In re Louisiana Crawfish Producers*, 772 F.3d 1026 (5th Cir. 2014). Our decision left Florida Gas, Southern Natural, and Dow, along with their insurers, as the remaining defendants.

Following our decision in *Louisiana Crawfish*, the remaining defendants and Plaintiffs conferred and prepared a case management order to establish litigation deadlines. At the time the parties created the case management order, Southern Natural's Rule 30(b)(6) deposition had not yet occurred. The parties agreed upon a proposed case management order, which stated, in pertinent part:

> 3. Dispositive Motions:
>
> a. Any party having dispositive motion(s) concerning legal issues and not requiring additional fact discovery shall file their motion(s) by July 31, 2015.
>
> b. Oppositions to dispositive motions filed on or before July 31, 2015 shall be filed by August 31, 2015.
>
> c. Any reply briefs shall be filed by September 15, 2015.
>
> d. Within thirty (30) days from receipt of the transcript of the Southern Natural Gas Company deposition in this matter, Plaintiffs shall file any dipositive motions or supplemental oppositions necessitated by factual information learned during the deposition.

---

[2] Dow remains a defendant in the district court but is not a party to this appeal.

[3] Specifically, the district court found that with respect to Southern Natural, Florida Gas, and Dow, Plaintiffs' allegation of dredging on navigable waters bears a sufficient relationship to traditional maritime activity to state a claim for a maritime tort under *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995).

No. 16-30353

Southern Natural advised Plaintiffs that its earliest available deposition date was September 22, 2015. This date fell after the case management order's August 31 deadline for Plaintiffs to oppose dispositive motions. Plaintiffs nevertheless agreed to hold Southern Natural's deposition on September 22, 2015, anticipating they would be allowed to supplement their opposition to any dispositive motions with information learned at the deposition.

On July 31, 2015, in accordance with the case management order, Florida Gas, Southern Natural, and Dow filed a joint motion seeking reconsideration of the district court's earlier denial of their motion to dismiss or, alternatively, seeking summary judgment and dismissal of Plaintiffs' claims. Plaintiffs timely submitted their opposition to the motion in accordance with the deadlines set forth in the case management order. Plaintiffs attached to their opposition evidence pertaining to Florida Gas and Dow, but they did not attach any evidence pertaining to Southern Natural.[4]

While the motion was pending before the district court, Southern Natural's corporate representative was deposed on September 22, 2015. During the deposition, Southern Natural's corporate representative testified that Southern Natural engaged in dredging in connection with the subject spoil banks.[5] At the end of the deposition, Southern Natural's corporate representative reserved his right to read and sign the deposition transcript. At

---

[4] Plaintiffs did note in their opposition brief that they would be deposing Southern Natural in the coming months, and stated that they "reserved the right to supplement this opposition after the deposition of Southern Natural Gas which is set to take place in late September, 2015."

[5] Specifically, Southern Natural's corporate representative testified:
Q: Let's talk about the Section 28 line. Do you know how that line was actually constructed?
A: I know that the line was permitted to be constructed by virtue of Southern Natural digging a flotation canal for waterborne equipment to lay the pipeline, and we know that was done in accordance with the permit.

4

No. 16-30353

Plaintiffs' request, the court reporter provided an uncertified copy of the transcript to Plaintiffs on October 26, 2016. However, because Southern Natural's corporate representative had not yet signed the transcript, an official transcript was not yet available. After the deposition took place, Plaintiffs also forwarded requests for admissions to all defendants, ahead of the agreed-upon discovery cutoff date. In its response, Southern Natural admitted to using dredge vessels in the construction of the canal at issue.[6]

On November 12, 2015, while Plaintiffs were still awaiting the official deposition transcript, the district court granted summary judgment in favor of Florida Gas and Southern Natural,[7] finding that Plaintiffs did not provide evidence that created a genuine issue of material fact as to whether either of these defendants had engaged in dredging activities. The certified transcript of the Southern Natural deposition was finally provided to Plaintiffs on November 17, 2015—five days after the district court's ruling.

Plaintiffs moved the district court to reconsider its grant of summary judgment under Federal Rule of Civil Procedure 59(e). In their brief in support of this motion, Plaintiffs argued that the district court's ruling as it pertained

---

[6] Plaintiffs' first request for admission asked Southern Natural to "Admit or deny that the canals in which Southern Natural Gas' 'South Section 28 Pipeline' . . . [is/was] situated were dredged by dredging vessels." In response, Southern Natural admitted that Southern Natural "constructed the South Section 28 Pipeline . . . in accordance with the permits issued by United States Army Corps of Engineers . . . ."

[7] The district court denied the defendants' motion to reconsider the order denying their motion to dismiss, holding that dredging of a navigation canal, conducted from a vessel on navigable waters, shows a substantial connection to traditional maritime activity sufficient to support a maritime tort claim. (citing *Sisson v. Ruby*, 497 U.S. 358, 367 (1990) (in addition to "navigation," traditional maritime activities include "at least . . . any other activities traditionally undertaken by vessels, commercial or noncommercial"); *Grubart*, 513 U.S. at 539-40 (dredge and dock company's bridge repair and maintenance work from a vessel on a navigable waterway was substantially related to traditional maritime activity); *In re The V-14813*, 65 F.2d 789, 790 (5th Cir. 1933) ("There are many cases holding that a dredge . . . employed on navigable waters, is subject to maritime jurisdiction . . . .")). The parties do not contest this holding.

5

No. 16-30353

to Southern Natural was procedurally erroneous because Plaintiffs did not have an opportunity to supplement their opposition to the defendants' motion under the terms of the case management order. Plaintiffs also attached additional evidence to their brief which they argued supported their claims against both Florida Gas and Southern Natural. This new evidence included Southern Natural's deposition testimony, exhibits offered at Southern Natural's deposition, and Southern Natural's responses to requests for admissions.

The district court denied Plaintiffs' motion for reconsideration as to both Florida Gas and Southern Natural. Plaintiffs now appeal the district court's original order granting summary judgment as well as the district court's order denying reconsideration.

## II.

We review grants of summary judgment *de novo*, applying the same standard as the district court. *Templet v. Hyrdochem Inc.*, 367 F.3d 473, 477 (5th Cir. 2004). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]here the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Only when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party' is a full trial on the merits warranted." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)) (citations omitted). All reasonable inferences must be viewed in the light most favorable to the party opposing summary judgment, and any doubt must be resolved in favor of the non-moving party. *Matsushita Elec. Indus. Co.*

6

No. 16-30353

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hillman v. Loga*, 697 F.3d 299, 302 (5th Cir. 2012).

Typically, we review a district court's decision on a Rule 59 motion to reconsider for abuse of discretion. *Templet*, 367 F.3d at 477. However, this depends on whether the district court considered materials attached to the motion for reconsideration which were not previously provided to the court when it granted summary judgment. *Id.* (citing *Ford Motor Credit Co. v. Bright*, 34 F.3d 322, 324 (5th Cir. 1994)). "If the materials were considered by the district court, and the district court still grants summary judgment, the appropriate appellate standard of review is *de novo*." *Id.* "However, if the district court refuses to consider the materials, the reviewing court applies the abuse of discretion standard." *Id.* Under an abuse of discretion standard of review, "the district court's decision and decision-making process need only be reasonable." *Id.*

## III.

We first address the district court's grant of summary judgment and subsequent denial of Plaintiffs' motion for reconsideration with respect to Florida Gas. Florida Gas contends that it did not perform any dredging, but rather that its activities were limited to placing a pipeline into an already existing canal. Under our precedent, merely placing pipeline—"pipeline construction and repair"—is insufficient to support a maritime tort claim. *See Louisiana Crawfish*, 772 F.3d at 1029–30. The issue before us on appeal is whether Plaintiffs met their summary judgment burden of demonstrating that a genuine issue of material fact exists as to whether Florida Gas engaged in dredging.

In opposition to Florida Gas's summary judgment motion, Plaintiffs submitted Florida Gas's United States Army Corps of Engineers permit and permit application. Plaintiffs attached additional evidence to their motion for

reconsideration, which included Southern Natural's corporate deposition testimony, a photograph purporting to show the canal in which Florida Gas's pipeline is placed, and a document entitled "Memorandum and Files." Because the district court considered this additional evidence in denying the motion for reconsideration as to Florida Gas, this evidence became part of the summary judgment record. *Templet*, 367 F.3d at 477–79. Therefore, we review *de novo* whether summary judgment was appropriate.[8] *Id.* at 477. We hold that the district court did not err in granting summary judgment in favor of Florida Gas and in subsequently denying Plaintiffs' motion for reconsideration as to Florida Gas.

As a threshold matter, Plaintiffs argue that the district court erred by shifting the summary judgment burden to them because Florida Gas did not submit any evidence in support of its motion for summary judgment. However, Plaintiffs—not Florida Gas—bear the burden to present evidence creating a genuine issue of material fact to defeat summary judgment. *Lindsey*, 16 F.3d at 618 ("[W]here the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial."); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075, 1076 n.16 (5th Cir. 1994) (en banc) (noting that the party moving for summary judgment may simply assert the "absence of facts supporting the elements of the plaintiffs' theory of recovery" and need not "negate the existence of facts"); *see also* 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2727.1 (4th ed. 2016). Plaintiffs bear

---

[8] Both Plaintiffs and Florida Gas agree that the district court considered Plaintiffs' new evidence as to Florida Gas and that the *de novo* standard of review applies.

the burden of proving their maritime tort claims at trial and therefore bear the burden of demonstrating that Florida Gas dredged the canals in question.

In its summary judgment motion, Florida Gas "point[ed] to" the lack of record evidence that it participated in dredging activities; therefore, Plaintiffs bore the burden of "demonstrating by competent summary judgment proof" that there is a genuine issue of material fact as to whether Florida Gas dredged. *See Lindsey*, 16 F.3d at 618. The evidence submitted by Plaintiffs—either initially in opposition to summary judgment or later attached to their motion for reconsideration—was not sufficient to satisfy this burden.

Plaintiffs argue that Florida Gas's Army Corps of Engineers permit application creates a genuine issue of fact because "[e]very company that dredged canals in the Atchafalaya during this time period was required to obtain a permit like these." But Florida Gas's application makes no reference to dredging; rather, it only provides for the pipeline to be dropped into an open, forty-foot-wide canal. Indeed, this application supports Florida Gas's theory that it was seeking permission to drop a pipeline into an *existing* canal—not seeking to dredge a canal.

Likewise, Florida Gas's permit itself does not create a fact issue as to whether Florida Gas dredged the canal in question. The only mention of dredging in Florida Gas's permit is in a list of boilerplate conditions that are not tied to any specific location. These conditions do not show that Florida Gas requested permission to dredge, that it received permission to dredge, or, most critically, that it actually dredged. There is nothing in Florida Gas's permit that defeats summary judgment.[9]

---

[9] Plaintiffs also argue that there are "vicinity maps" in Florida Gas's permit that demonstrate there were no pre-existing canals at the time Florida Gas's permit was issued. Plaintiffs argue that if Florida Gas laid its pipeline into an existing canal, the canal would have been depicted on these maps. However, the maps themselves are unclear and it is difficult to discern what they are depicting. Plaintiffs do not offer testimony or other record

No. 16-30353

Plaintiffs contend that Southern Natural's corporate deposition testimony also creates a genuine issue of material fact as to Florida Gas's dredging. Specifically, Plaintiffs argue that Southern Natural's corporate representative testified that if a forty-foot wide canal remained in existence today, that *could* be an indication that the canal had been dredged. Plaintiffs' reliance on this testimony is misplaced because the testimony does not specifically address Florida Gas's pipelines nor does it address whether Florida Gas had conducted any dredging. Further, Plaintiffs have not cited to anything in the record that indicates that Southern Natural's representative had any knowledge of Florida Gas's pipeline construction history.

Plaintiffs also submitted a photograph that they contend shows "an approximately forty-foot wide canal with adjacent spoil banks still in existence today in the fishery, in which FLORIDA's pipeline rests, today." Plaintiffs contend that because this canal exists, Florida Gas, "or someone on its behalf . . . dredged a canal." However, as the district court noted, the photograph is of such poor quality that it is extremely difficult to determine what it depicts. Further, even if the photograph proves the existence of a canal, this does not serve as evidence that Florida Gas dredged the canal. Indeed, Florida Gas has agreed all along that a canal exists; it only contends it did not dredge it.

The final piece of evidence offered by Plaintiffs to defeat summary judgment with respect to Florida Gas is a document entitled "Memorandum for the Files." In this document, a Southern Natural employee purportedly writes that he consulted with an employee from Florida Gas to inquire about the credentials of a dredging contractor Florida Gas had used. Plaintiffs argue

---

evidence to support their assertion that "there are no pre-existing canals depicted" on the maps, much less that Florida Gas dredged canals. Such conjecture, unsupported by competent summary judgment evidence, cannot create a fact issue to defeat summary judgment.

that given the proximity in time between when the memo was produced and when Florida Gas constructed its pipeline at issue in this case, "there is certainly a logical inference to be made that the memo refers to FLORIDA's pipelines at issue in this case." However, as the district court correctly recognized, this document cannot defeat summary judgment as to Florida Gas because the document does not reference a specific Florida Gas project and there is nothing on the face of the document that connects it to any of the pipelines at issue.[10]

In sum, none of Plaintiffs' evidence creates a genuine issue of material fact as to whether Florida Gas participated in dredging activities. *Little*, 37 F.3d at 1075. Accordingly, we affirm the district court's grant of summary judgment in favor of Florida Gas. Having done so, we also affirm the denial of Plaintiffs' motion for reconsideration as to Florida Gas.

## IV.

We turn next to the district court's grant of summary judgment in favor of Southern Natural and its subsequent denial of Plaintiffs' motion for reconsideration as it pertained to Southern Natural. The district court granted summary judgment in favor of Southern Natural because Plaintiffs did not

---

[10] In its opinion granting summary judgment, the district court also addressed the deposition testimony of Florida Gas's corporate representative, Dennis Alters. Alters testified that after reviewing Florida Gas's "construction notes . . . foot by foot," there was no mention of any dredging activity. The district court accepted Alters's testimony as "uncontradicted and unimpeached." Plaintiffs argue that because Alters "could only speculate on how the canals came into existence" and did not testify as to what actually happened, Florida Gas "never established that there was no genuine issue of fact as to whether it engaged in dredging." Again, it is Plaintiffs' burden to produce evidence that Florida Gas dredged, not Florida Gas's burden to prove they did not. Despite Alters's testimony, however, Plaintiffs could have defeated summary judgment as to Florida Gas had they produced evidence that created a genuine issue of material fact as to whether Florida Gas dredged. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Hillman*, 697 F.3d at 302 ("Doubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." (quoting *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 507 (5th Cir. 2003)). Plaintiffs have failed to do so, and thus summary judgment as to Florida Gas is appropriate.

submit any evidence relating to Southern Natural's dredging activity in opposition to the summary judgment motion. The district court's initial grant of summary judgment in favor of Southern Natural was proper[11]— Southern Natural pointed "to an absence of evidence" supporting Plaintiffs' claims, thus shifting to Plaintiffs "the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial," a burden Plaintiffs did not satisfy. *Lindsey*, 16 F.3d at 618.

However, we must also determine whether the district court's denial of reconsideration as to Southern Natural was proper in light of the evidence Plaintiffs submitted along with their motion for the district court to reconsider Southern Natural's dismissal. Unlike the district court's review of Plaintiffs' new evidence pertaining to Florida Gas, the district court likely did not consider Plaintiffs' new evidence pertaining to Southern Natural;[12] therefore, we review the district court's denial of Plaintiffs' Rule 59(e) motion as to Southern Natural for abuse of discretion. *See Luig v. N. Bay Enters, Inc.*, 817 F.3d 901, 905–06 (5th Cir. 2016) (applying the abuse of discretion standard where "[t]he district court likely did not consider [movant's] newly presented

---

[11] Plaintiffs argue that the district court erred in "converting" Southern Natural's motion from a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) to a motion for summary judgment under Rule 56. However, Southern Natural moved the district court to reconsider its prior dismissal of Southern Natural's motion to dismiss or, alternatively, to grant summary judgment in Southern Natural's favor. To the extent that Plaintiffs argue they did not have adequate notice that the district court could grant summary judgment, the title of the defendants' motion made it clear that Southern Natural and the other defendants were seeking summary judgment.

[12] Plaintiffs contend that the district court considered Southern Natural's responses to Plaintiffs' requests for admissions wherein Southern Natural admitted to dredging. Plaintiffs argue that the district court's opinion "acknowledges the substance and contents" of Southern Natural's responses and therefore the district court "considered" them so as to trigger our *de novo* review. *See Templet*, 367 F.3d at 477. While the district court may have acknowledged the new evidence, it did not consider that evidence under the summary judgment standard, and therefore *de novo* review is inappropriate here.

evidence when denying the [Rule] 59(e) motion"). We hold that the district court abused its discretion in denying Plaintiffs' motion for reconsideration as to Southern Natural.

The district court declined to reconsider its grant of summary judgment in favor of Southern Natural despite Plaintiffs providing three types of new evidence upon reconsideration: (1) Southern Natural's deposition transcript; (2) documentary evidence offered during Southern Natural's deposition; and (3) Southern Natural's responses to requests for admission. There are several factors the district court should have considered when determining whether to grant Plaintiffs' motion for reconsideration in light of Plaintiffs' new evidence: (1) the probative value of the evidence; (2) the reason for Plaintiffs' default; (3) whether the evidence was available to Plaintiffs at the time of the summary judgment motion; and (4) potential prejudice to Southern Natural. *See Luig*, 817 F.3d at 906 (citing *Templet,* 367 F.3d at 478). These factors "are simply illustrative and not exhaustive." *Templet*, 367 F.3d at 482. The district court concluded that all of the additional evidence that Plaintiffs asked the court to consider was "plainly available or easily discovered before summary judgment." We disagree with the district court's analysis, particularly as it pertains to Southern Natural's deposition transcript and responses to requests for admissions.[13]

---

[13] In addition to Southern Natural's deposition transcript and responses to requests for admission, Plaintiffs also offered the documentary evidence from Southern Natural's deposition as "new" evidence. Plaintiffs candidly acknowledge in their brief that "all of the deposition exhibits were in [their] possession at the time they originally opposed the summary judgment." Because this evidence was available to Plaintiffs at the time of the summary judgment motion and because Plaintiffs have not presented a satisfactory reason for not coming forward with this evidence at the time their opposition was filed, we conclude the district court did not abuse its discretion in not reconsidering its grant of summary judgment in light of this particular evidence. *See Luig*, 817 F.3d at 906. Further, it is unnecessary to address the deposition exhibits in more detail because we conclude that the district court abused its discretion when it did not reconsider its grant of summary judgment

No. 16-30353

Southern Natural's deposition transcript and responses to requests for admissions are clearly probative. The district court granted summary judgment as to Southern Natural because Plaintiffs failed to present evidence that Southern Natural engaged in any dredging activities. In both its deposition and its responses to requests for admissions, Southern Natural candidly admitted that it dredged the canal in question.[14] If the district court would have considered the contents of Southern Natural's deposition or its admissions, Plaintiffs would have defeated summary judgment as to Southern Natural.[15]

Plaintiffs' reasons for their default also support granting their motion for reconsideration. First, as to Southern Natural's deposition transcript, Plaintiffs had not yet received an official copy of the transcript at the time the district court granted the motion for summary judgment. In evaluating Plaintiffs' motion for reconsideration, the district court faulted Plaintiffs for failing to seek an extension of time to file supplemental briefing after Southern Natural's deposition took place and while Plaintiffs were waiting for an official copy of the transcript. However, no extension of time should have been necessary—Plaintiffs were justified in relying on the deadlines set forth in the

---

as to Southern Natural in light of Southern Natural's deposition transcript and responses to request for admissions, which were sufficient to defeat summary judgment.

[14] Notably, Southern Natural does not dispute that it admitted to dredging the canal at issue in its deposition and its responses to requests for admissions. Rather, Southern Natural only contends that the district court did not abuse its discretion in denying Plaintiffs Rule 59(e) motion because Plaintiffs did not present this key evidence to the court in a timely manner.

[15] As we have noted above, the parties do not dispute the district court's holding that dredging of a navigation canal, conducted from a vessel on navigable waters, has a substantial connection to maritime activity sufficient to support a maritime tort claim. *See Grubart*, 513 U.S. at 539. Therefore, Plaintiffs' evidence that Southern Natural dredged would have been sufficient to support their maritime tort claim and defeat summary judgment.

14

case management order. The case management order allowed Plaintiffs thirty days from the time they received Southern Natural's deposition transcript to file any dispositive motions *or any supplemental oppositions* with the court. However, the district court entered its order granting summary judgment on November 12, 2015—five days *before* Plaintiffs received the official deposition transcript. Plaintiffs submitted their motion for reconsideration along with the new evidence on November 25, 2015—a mere eight days after Plaintiffs received the official transcript and well within the thirty-day timeframe established by the case management order.[16] Contrary to the district court's conclusion, Plaintiffs were not required to request an extension of time in order to submit the deposition transcript to the district court.

Second, as to Southern Natural's responses to requests for admissions, the district court faulted Plaintiffs for "failing to immediately move to supplement their opposition when they received [Southern Natural's] responses" three days before the district court's ruling. But the district court failed to recognize that Plaintiffs, relying on the terms of the case management order, had no reason to believe the district court would grant the defendants' motion while Plaintiffs were still awaiting Southern Natural's official deposition transcript.[17] Plaintiffs therefore had no reason to "immediately"

---

[16] To the extent Southern Natural argues that the thirty-day time period should run from the time that Plaintiffs received the unofficial deposition transcript, this does not change our analysis. Plaintiffs received the unofficial, unsigned draft of the deposition transcript on October 26, 2015. Therefore, Plaintiffs still satisfied the thirty-day requirement when they filed their motion for reconsideration, along with the new evidence, on November 25, 2015.

[17] Plaintiffs were justified in believing that the district court was aware of the case management order and that the district court would abide by the deadlines agreed to by the parties. The case management order was signed by Magistrate Judge Hanna and entered into the case docket. However, in its opinion denying Plaintiffs' motion for reconsideration, the district court noted that "it was unaware" of the case management order. While we do not fault the district court for overlooking the case management order docket entry in this complicated, drawn-out case, the district court should have corrected this oversight upon

bring Southern Natural's responses to the district court's attention, but rather were justified in waiting for the transcript so that they could file a single supplemental opposition brief that would include both Southern Natural's deposition transcript and Southern Natural's responses. *See Luig*, 817 F.3d at 907 ("Although the [the movant] likely had access to the evidence presented in the [Rule] 59(e) motion at the time it filed its summary judgment motion, [the movant's] failure to present the evidence was excusable because the district court did not give [the movant] the opportunity to present this evidence before effectively granting summary judgment . . . .").

The third factor—whether the evidence was available to Plaintiffs at the time of the summary judgment motion—also favors Plaintiffs. Southern Natural contends that the case management order limits Plaintiffs' rights to file supplemental materials to those materials that include "factual information learned during the deposition." Southern Natural argues that none of the information Plaintiffs learned at the deposition or from Southern Natural's admissions was new—Plaintiffs had all of the deposition exhibits in their possession for several years before the summary judgment motion and these documents contained evidence that Southern Natural dredged.

We disagree. While it may be true that Plaintiffs had much of the relevant documentary evidence in their possession before Southern Natural moved for summary judgment, the admission made by Southern Natural that the company dredged the pipeline in question was indeed "information learned" by Plaintiffs. An admission by a party carries considerably more weight than inferences drawn from documentary evidence purporting to support a certain fact. Indeed, an admission by a party "is conclusively

---

Plaintiffs' motion for reconsideration. Plaintiffs should not be punished as a result of the district court's oversight.

established" as fact in the case. Fed. R. Civ. P. 36(b); *see also In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001) ("Rule 36 admissions . . . are conclusive as to the matters admitted, they cannot be overcome at the summary judgement stage . . . ."); 8B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2264 (3d ed. 2017) (noting that a Rule 36 admission, "deliberately drafted by counsel for the express purpose of limiting and defining the facts in issue, is traditionally regarded as conclusive"). Plaintiffs did not have Southern Natural's admission before Southern Natural responded to Plaintiffs' requests for admissions and the Southern Natural deposition took place. We therefore conclude that Southern Natural's candid admission that it dredged the pipeline in question is new evidence that was not available to Plaintiffs at the time of the summary judgment motion.

Finally, Southern Natural will not be unfairly prejudiced by the district court's consideration of Southern Natural's own admissions and deposition testimony. This is not situation in which Southern Natural was unaware that the evidence at issue existed—the contents of both the deposition testimony and admissions were always known to Southern Natural and within its control. Further, had the district court utilized the case management order, this evidence would have been properly in front of the district court before it granted summary judgment in Southern Natural's favor. *See Luig*, 817 F.3d at 907 (holding that there was no prejudice where, had the district court allowed the moving party the proper opportunity to respond, "the evidence would have been properly in front of the district court").

There are "two important judicial imperatives" relating to a motion for reconsideration: "(1) the need to bring litigation to an end; and (2) the need to render just decisions on the basis of *all* the facts." *Templet,* 367 F.3d at 479 (emphasis added). Plaintiffs presented new, conclusive evidence in their motion for reconsideration pertaining to Southern Natural that they were

No. 16-30353

justified in not presenting earlier. The district court's failure to reconsider its grant of summary judgment as to Southern Natural in light of this new evidence amounted to an abuse of discretion. *See Luig*, 817 F.3d at 907.

## V.

Accordingly, we AFFIRM the district court's grant of summary judgment and denial of the motion for reconsideration with respect to Florida Gas. With respect to Southern Natural, we REVERSE the district court's denial of Plaintiffs' Rule 59(e) motion and VACATE its grant of summary judgment. We REMAND for further proceedings consistent with this opinion.